UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MANDY RICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-03166 SEP |
| | ) |
| ST. LOUIS UNIVERSITY, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Mandy Rice's ("Dr. Rice") Motion for Discovery (Doc. [55]) and Defendant St. Louis University's ("SLU") request for a discovery conference (Doc. [56]).[1] This Court held a teleconference on July 1, 2020, at which counsel for both parties were present.

**I.      Background**

Dr. Rice and SLU previously conducted extensive discovery in a related action in Missouri state court. The parties agree that discovery in this case will be limited to those claims that were not raised in the previous action—namely, Dr. Rice's Title VII claims. The parties disagree about the appropriate extent of that additional discovery and whether certain privileges apply. The Court will consider below the parties' respective requests and objections.[2]

---

[1] For purposes of this Memorandum and Order, the Court will treat SLU's request for a discovery conference as a Motion to Compel.

[2] The parties have reached resolutions as to Dr. Rice's Requests for Production Nos. 2 and 18. Additionally, the Court has been informed that Dr. Rice no longer seeks separate interrogatory answers from Drs. Wittgen and Freeman. Thus, the Court will not address those requests.

1

**II.    Discussion**

    A.  <u>Dr. Rice's Interrogatories Nos. 11, 12, 23, and 24</u>

Dr. Rice seeks information regarding surgical residents at SLU who were placed on probation or assigned a unique rotation schedule between 2014 and 2018.  Doc. [55] ¶¶ 4-7; Hearing Tr. 9:22-10:4.  SLU contends that these requests should be restricted to residents in the General Surgery Program between 2016 and 2018.  Doc. [57] at 1-2.  The Court agrees that Dr. Rice's requests should be confined to residents in the General Surgery program but sees no basis for excluding information from the years 2014 and 2015.  *See Lyoch v. Anheuser-Busch Co.*, 164 F.R.D. 62 (E.D. Mo. 1995) (limiting scope of document production related to age or sex discrimination to five years).

SLU also contends that the requests, as phrased, would require it to produce irrelevant documents, such as those containing mundane patient-care matters.  Doc. [57] at 3.  The Court is sensitive to these concerns, especially considering the voluminous discovery that already took place in state court.  SLU will be required to identify only those documents that directly address decisions to place residents on probation or assign them a unique rotation schedule.

    B.  <u>Lisa Israel's Executive Analysis</u>

In 2019, SLU's Director of Professional Oversight prepared a report (the "Executive Analysis" or "Analysis") on bullying and harassment in the General Surgery program.  Dr. Rice seeks to discover the names of all individuals interviewed for the purposes of the Analysis, as well as all related documents.  Doc. [55] ¶ 11.  SLU objects on the grounds that the Executive Analysis is irrelevant to Dr. Rice's claims because it was not prepared until one year after Dr. Rice's residency had ended.  Doc. [57] at 3-4; Doc. [73] at 7-9.  SLU also argues that the

Analysis and related information are protected under the self-critical analysis privilege.  Doc. [57] at 4.

*1. Relevance*

The Court finds that the Executive Analysis is relevant to Dr. Rice's Title VII claims. According to Dr. Rice, the Executive Analysis describes a residency program fraught with bullying and harassment of the very kind Dr. Rice alleges here.  Doc. [55] ¶ 11; Doc. [59] at 2-3. The Analysis—and by extension the information on which it was based—satisfies the relevance standard for discovery in civil cases.  *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (requiring only a "threshold showing of relevance . . . before parties are required to open wide the doors of discovery . . . .").

SLU's efforts to downplay the Analysis's relevance are betrayed by its own briefing.  For example, SLU cites the Southern District of Ohio's opinion in *Jones v. St. Jude S.C., Inc.* for the proposition that "me too" evidence is irrelevant in harassment suits.  Doc. [73] at 8 (citing 823 F. Supp. 2d 699 (S.D. Ohio 2011)).  But as that very court observed, such evidence can be relevant when "the same actors, reasons, and circumstances [are] involved."  823 F. Supp. 2d at 734; *see also Sallis v. Univ. of Minn.*, 408 F.3d 470, 478 (8th Cir. 2007) ("Courts have frequently tailored discovery requests, as to historic company records, to encompass a reasonable time period, both before and after the discriminatory event being alleged.") (internal quotation marks and citation omitted).

As far as the Court can tell, the Executive Analysis involves the same actors, reasons, and circumstances as Dr. Rice's claims.  SLU has not alleged wholesale program changes in the year following Dr. Rice's termination, nor a mass exodus of faculty members during that time.  And contrary to SLU's assertions, a one-year difference is not so remote as to render the Executive

3

Analysis irrelevant to Dr. Rice's claims—especially when the Analysis makes specific reference to Dr. Rice's lawsuit.  Doc. [59] at 2.

### 2. *The Self-Critical Analysis Privilege*

SLU's attempt to invoke the self-critical analysis privilege is unavailing.  Evidentiary privileges are governed by Federal Rule of Evidence 501.  Rule 501 does not provide for any specific privileges but instead instructs courts to look to "[t]he common law—as interpreted by United States courts in the light of reason and experience . . . ."  Fed. R. Evid. 501.  "Federal common law recognizes a privilege only in rare situations."  *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 (8th Cir. 1997).  Indeed, courts generally will not recognize a privilege unless the reasons for doing so outweigh the need for truth.  *See United States v. Nixon*, 418 U.S. 683, 709-10 (1974); *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996).

While some courts have fashioned a privilege for self-critical analyses, the Eighth Circuit has displayed "a marked reluctance to accept the [] privilege."  *Capellupo v. FMC Corp.*, CIV. No. 4–85–1239, 1988 WL 41398, at *4 (D. Minn. May 3, 1988) (citing *In re Burlington Northern Inc.*, 679 F.2d 762, 767 (8th Cir. 1982)); *see also In re Burlington Northern Inc.*, 679 F.2d at 765 n.4 (observing that "courts have appeared reluctant to enforce even a qualified 'self-evaluation' privilege").  This reluctance appears to have calcified over the last four decades.  *See, e.g., Capellupo*, 1988 WL 41398, at *7 (finding magistrate judge's application of the privilege erroneous as a matter of law); *West v. Marion Labs. Inc.*, No. 90–0661–CV–W–2, 1991 WL 517230, at *2 (W.D. Mo. Dec. 12, 1991) ("Considering the general reluctance of the 8th Circuit to acknowledge the 'self-critical analysis' privilege . . . this Court will grant plaintiff's motion to compel discovery . . . ."); *Tharp v. Sivyer Steel Corp.*, 149 F.R.D. 177, 182 (S.D. Iowa 1993) ("[T]he court concludes that the 'self-critical analysis' privilege should not be recognized in the

4

field of employment discrimination litigation."); *LeClere v. Mutual Trust Life Ins. Co.*, No. C99–0061, 2000 WL 34027973, at *3 (N.D. Iowa June 14, 2000) (refusing to apply "this relatively novel theory of privilege."). *See generally Tanner v. McMurray*, 405 F. Supp. 3d 1115, 1195-99 (D.N.M. 2019) (recounting the self-critical analysis privilege's "checkered existence in the federal courts") (quoting *Mitchell v. Fishbein*, 227 F.R.D. 239, 251 (S.D.N.Y. 2005)).

The Court is inclined to follow the majority of federal courts in declining to recognize a self-critical analysis privilege. *See Tanner*, 405 F. Supp. 3d at 1195 ("The Courts of Appeals that have faced the question directly have not recognized the privilege."). SLU has not cited any precedent of the Eighth Circuit or any district court therein, nor has it shown that "reason and experience" compel this Court to recognize a novel privilege despite that lack of precedent.[3] Fed. R. Evid. 501. Accordingly, the Court will grant Dr. Rice's requests for information and documents relating to the Executive Analysis.

C. <u>Dr. Rice's Request for Production No. 3</u>

Dr. Rice requests "any and all communications, reports, or other documents concerning or related to any investigation by SLU into any complaint made by [Dr. Rice] or other residents from January 1, 2017, to the present concerning bullying, harassment, other disruptive behavior, or retaliation engaged in by Dr. Grace Montenegro and/or Dr. Theresa Schwartz." Doc. [55] ¶ 9.

---

[3] SLU emphasized during the teleconference that it promised confidentiality to the Executive Analysis participants. Hearing Tr. 26:17-23; 27:23-25. But SLU's unilateral decision to make such a promise cannot override Dr. Rice's right to access information relevant to her claims. *See Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 793-94 (8th Cir. 1997) (holding that promises of confidentiality to third parties was not enough to establish a privilege). Moreover, the stipulated protective order in this case (Doc. [25]) provides for discovery materials to be designated "Confidential" or "Attorneys' Eyes Only," as appropriate. Concerns about confidentiality of discovery materials should be addressed in accordance with that Order.

5

SLU objects that such information is privileged under the Missouri peer review statute and the federal Patient Safety and Quality Improvement Act ("PSQIA"). Doc. [73] at 3.

### 1. *Missouri Peer Review Privilege*

Section 537.035 of the Missouri Revised Statutes provides that "interviews, memoranda, proceedings, findings, deliberations, reports, and minutes of peer review committees, or the existence of the same, concerning the health care provided any patient are privileged and shall not be subject to discovery . . . ." Mo. Rev. Stat. § 537.035.4. Federal courts are not required to apply state law privileges in federal question cases. Fed. R .Evid. 501. Nonetheless, SLU asks the Court to apply the state law privilege as an exercise of its discretion under the "in the light of reason and experience" component of Rule 501. *See* Doc. [73] at 3-6. The Court declines that invitation.

As already explained, the creation of new privileges is generally disfavored. Section B., *supra*. This is especially true in cases of discrimination. *See Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 193 (1990) (refusing to recognize academic peer review privilege in Title VII case because "ferreting out this kind of invidious discrimination is a great, if not compelling, governmental interest"). What's more, invocations of *medical* peer review privileges carry little weight in employment discrimination cases. *See Holland v. Muscatine Gen. Hosp.*, 971 F. Supp. 385, 389 (S.D. Iowa 1997) ("Disclosure of documents and information bearing primarily on employment issues does not materially conflict with the fundamental objective of promoting quality health care served by the peer review privilege.").

SLU notes that Dr. Rice's complaint to SLU was styled as a patient safety complaint rather than a human resources complaint, but that formality does not alter the fact that the conduct underlying the complaint is the same conduct underlying Dr. Rice's Title VII claims.

6

The information Dr. Rice seeks therefore has "a close degree of relevance to [SLU's] knowledge and investigation of the conduct of physicians which has allegedly resulted in employment discrimination in violation of federal law." *Id*. Moreover, withholding this information from Dr. Rice would in no way further Missouri's policy of protecting communications "to the extent they address the health care provided any patient." *State ex rel. Dixon v. Darnold*, 939 S.W.2d 66, 71 (Mo. Ct. App. 1997). The parties have indicated that the substance of Dr. Rice's complaint focused squarely on the attending physicians' treatment of *her*, not of any patients. Accordingly, the Court will not apply Missouri's peer review privilege in this case.

    *2. Patient Safety and Quality Improvement Act*

SLU also avers that the information Dr. Rice seeks is privileged under the PSQIA. The PSQIA establishes a federal privilege for "patient safety work product." 42 U.S.C. § 299b-22(a). Patient safety work product includes, in relevant part:

> any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements—
>
> (i)    which . . . are assembled or developed by a provider for reporting to a patient safety organization *and are reported to a patient safety organization* . . . and which could result in improved patient safety, health care quality, or health care outcomes; or
>
> (ii)   which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system.

42 U.S.C. § 299b-21(7)(A) (emphasis added). The statute defines "patient safety evaluation system" as "the collection, management, or analysis of information *for reporting to or by a patient safety organization*." 42 U.S.C. § 299b-21(6) (emphasis added). As the party claiming the privilege, SLU has the burden of showing that requested information falls into one of the above categories. Fed. R. Civ. P. 26(b)(5). SLU has not carried that burden.

7

SLU states in its supplemental briefing that its peer review process—the process through which Dr. Rice's complaint was examined—"doubled as its PSQIA investigation process." Doc. [73] at 7. SLU also states that it "participated in" a patient safety organization. *Id*. But SLU nowhere suggests that it ever reported Dr. Rice's complaint to a patient safety organization, as required by 42 U.S.C. § 299b-21(7)(A)(i). Nor does it argue that the purpose of its peer review process was to collect, manage, or analyze such complaints "for reporting to . . . a patient safety organization," as required by 42 U.S.C. § 299b-21(7)(A)(ii). SLU has therefore failed to prove the privilege's applicability. *See Johnson v. Cook County*, No. 15 C 741, 2015 WL 5144365, at *6 (N.D. Ill. Aug. 31, 2015) (refusing to apply PSQIA privilege where defendant "offered no actual proof to support its assertion that the Report was ever reported—functionally or otherwise—to a [patient safety organization]").

D.  Depositions

Dr. Rice seeks to depose several witnesses for the first time and to re-depose several others. SLU concedes that additional depositions relating to Dr. Rice's Title VII claims are necessary, but it expresses concern at the breadth of Dr. Rice's requests.

The Court will allow Dr. Rice to re-depose Drs. Wittgen, Freeman, Schwartz, Williams, and Patel. The subject matter of these depositions shall be limited to questions relevant to Dr. Rice's Title VII allegations. Furthermore, deposition of each witness shall not exceed two (2) hours total, with Dr. Rice's counsel being allotted ninety (90) minutes and SLU's counsel being allotted thirty (30) minutes. Dr. Rice will also be allowed to depose Dr. Montenegro and Lisa Israel, subject to the same parameters as her re-depositions.

Dr. Rice also seeks to depose both her current program director at Allegheny Hospital and the Chief Nursing Officer at SLU Hospital. Dr. Rice has not provided a satisfactory rationale for deposing those witnesses, so the Court will deny those requests.

E. SLU's Interrogatory No. 8 and Requests for Production Nos. 32 and 33

SLU seeks information and documents concerning Dr. Rice's medical and psychological care over the last ten years. SLU claims this information is relevant to Dr. Rice's claims of emotional distress. Doc. [56] at 2. Dr. Rice objects that SLU's requests are overbroad, and she intimates that the information may be privileged under the physician/therapist-patient privilege.[4]

The Court will grant SLU's request, but only in part. The Court agrees that by alleging emotional distress, Dr. Rice has placed her physical and mental health at issue and has therefore waived any claim of physician/therapist-patient privilege. *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000). The Court also agrees that information concerning Dr. Rice's physical and mental health should not be limited to treatment she received after her termination. But the Court is not convinced that a ten-year period is proportional to the needs of this case, nor does the Court see the relevance of medical records that have no conceivable connection to Dr. Rice's alleged distress. Accordingly, SLU's requests shall be limited to treatment Dr. Rice has received from mental health and primary care providers since 2013.

F. SLU's Request for Production No. 3

SLU's third Request for Production ("RFP") seeks "[a]ll documents and ESI . . . that support, relate to, cast doubt upon, or contradict" Dr. Rice's claims. Doc. [58] at 4. Dr. Rice

---

[4] The parties' briefing mentions the "clergy-penitent privilege." That privilege was not discussed at the hearing, and SLU did not suggest that it seeks information or records concerning any interactions Dr. Rice may have had with clergy members. As such, the Court does not address the application of this privilege. If SLU intends to compel production of such information, it must obtain leave to do so.

objects that these documents are protected by the work product doctrine insofar as the request seeks the mental impressions of her counsel. *Id.* SLU characterizes the RFP as a simple request for all documents "relating to" Plaintiff's allegations. Doc. [56] at 2.

"The work product privilege is designed to promote the operation of the adversary system by ensuring that a party cannot obtain materials that his opponent has prepared in anticipation of litigation." *Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997) (citation omitted). There are two types of protected work product: ordinary work product and opinion work product. *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). Opinion work product, the type at issue here, protects from discovery "counsel's mental impressions, conclusions, opinions or legal theories." *Id.*

The Eighth Circuit has held that the work product doctrine forbids inquiry into opposing counsel's "selection and compilation of documents . . . ." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir. 1986). That is because the selection and compilation of documents is often "based upon . . . professional judgment of the issues and defenses involved in [the] case." *Id.* Thus, "if production of the documents would reveal the attorneys' legal theories and thought processes in selecting the documents, the work product doctrine may apply." *McClurg v. Mallinckrodt, Inc.*, No. 4:12-CV-00361-AGF, 2016 WL 880388, at *1 (E.D. Mo. Mar. 8, 2016).

Dr. Rice claims to already have produced all documents "relating to" her claims, except for communications with counsel or documents created by counsel,[5] in response to SLU's second request for production. Doc. [58] at 4. The only value added by a response to RFP #3, she claims, would be Dr. Rice and her counsel's evaluation of which documents "support . . . cast

---

[5] As noted by SLU, any documents withheld from her responses to SLU's requests for production on the basis of work product doctrine should be appropriately noted in a privilege log. Doc. 56 at 3; *see* Fed. R. Civ. P. 26(b)(5)(A).

10

doubt upon, or contradict" her claims. In essence, Dr. Rice believes SLU is asking her counsel not just to produce relevant documents but to curate those documents according to their significance to her case.

If SLU is indeed asking for such categorization, they are overreaching. The determination that a given document supports or contradicts a claim is a matter of professional judgment. The adversarial process would not be well served by requiring counsel to disclose such judgments to opposing counsel. But SLU does not claim to be seeking such judgments. In accord with SLU's representation, then, Dr. Rice will not be required to respond to SLU's third RFP except to produce any non-privileged[6] documents "relating to" her claims that she has not already produced in response to SLU's second RFP. Neither Dr. Rice nor her counsel will be required to provide their own impressions as to whether such documents "support, . . . cast doubt upon, or contradict" Plaintiff's claims.

### G. Communications between Dr. Rice and her husband

SLU seeks to discover communications between Dr. Rice and her husband relating to Dr. Rice's residency. Dr. Rice's position is not entirely clear to the Court, but she clearly argues that some such communications are privileged under the marital communications privilege. *See* Doc. [58] at 4-7. When Dr. Rice raised this argument during the state proceedings, the state court found that Dr. Rice waived this privilege by posting about her residency on a website she and her husband maintained. Doc. [56-4] at 7.

Dr. Rice apparently does not dispute that she has waived the marital communications privilege as to the information contained on the website. Hearing Tr. 59:19-21. Instead, she

---

[6] And again, any privileged documents withheld should be recorded in Dr. Rice's privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A).

11

asserts that "[f]ederal common law does not support broad, subject matter waivers of privilege." Doc. [58] at 5. In other words, Dr. Rice believes she has waived the privilege only as to certain communications, which at one point she identifies as "any communications between Plaintiff and Todd, beyond what Defendants were already provided in the state court lawsuit." *Id.* at 7.

SLU argues that partial disclosure of a marital communication waives the privilege as to all communications on the same subject matter. Hearing Tr. 57:3-5. It claims that Dr. Rice has refused to produce conversations about her residency that took place after the state court's order. Doc. [56] at 3. For her part, Dr. Rice claims to have produced "communications between them concerning Plaintiff's residency which occurred prior to *and after* the issuance of the [July] 23, 2018 order," but in the very next sentence she denies that there is any evidence that any such communications "have been disclosed to any third party after the [July] 23, 2018 order." Doc. [58] at 7 (emphasis added). Thus, the Court concludes that Dr. Rice is seeking to protect some subset—and perhaps all—of her communications with her husband on the subject of her residency that post-date the state court's discovery order rejecting her spousal privilege argument.

The Eighth Circuit has not ruled on how district courts ought to evaluate the temporal scope of a waiver of marital communications privilege. Looking to the principles underlying federal marital communications privilege, though, the Court agrees with the state court that the Plaintiff has waived spousal privilege as to all communications with her husband related to her residency, Doc. [56-4] at 7, and it declines Plaintiff's request to limit that waiver to communications that occurred before the state court's ruling.

12

The case principally relied upon by the state court is itself a federal case, and it enunciates principles for federal courts to follow in determining the scope of spousal communications privilege:

> The marital communications privilege, like all privileges, must be narrowly construed because it blocks the judicial fact-finding function. *Ryan v. Commissioner of Internal Revenue,* 568 F.2d 531, 542 (7th Cir. 1977). It is important to decide where the privilege is applicable, taking into account the particular factual circumstances of the case. *Ryan,* 568 F.2d at 543. **In making the case-by-case determination, it is helpful to weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case.** *Id.* The marital communications privilege exists to insure that spouses generally feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law. *United States v, Byrd,* 750 F.2d 585, 590 (7th Cir.1984).

*Lien v. Wilson & McIlvaine*, No. 87 C 6397, 1988 WL 87067, at *1 (N.D. Ill. Aug. 12, 1988) (emphasis added).

On the facts before the Court, "the need for truth" easily outweighs the policy of ensuring that spouses feel free to communicate freely without fear of subsequent exposure. The only communications in dispute are those that transpired *after* Dr. Rice and her husband had *already* been ordered to disclose their communications on the subject of her residency to the opposing party in litigation that was by no means at its end. Thus, it beggars belief that these two spouses felt in any way "free to communicate their deepest feelings" on the subject of Dr. Rice's residency "without fear of eventual exposure in a court of law." *Id. Cf. United States v. 281 Syosset Woodbury Road*, 71 F.3d 1067, 1072 (2d Cir. 1995) (denying marital communications privilege for later communications when the witness "should have known that her earlier testimony might constitute a waiver of the confidential communications privilege").

13

Neither does it seem plausible that denying the privilege under these extremely unusual circumstances would jeopardize other spouses' sense of security in their conversations that do not relate to subject matters as to which they have already been denied spousal privilege in a court of law.  Therefore, the policy sought to be furthered by spousal privilege would not be appreciably furthered by applying it in this case.

Accordingly, the Court will grant SLU's request and require Dr. Rice to produce all communications between her and her husband that relate to her residency at SLU.

**III.   Conclusion**

For the reasons stated above,

**IT IS HEREBY ORDERED** that Dr. Rice's Motion to Compel (Doc. [55]) is **GRANTED in part** and **DENIED in part**.

The Motion to Compel is **GRANTED** as to Dr. Rice's Interrogatories Nos. 11, 23, and 24 as they relate to residents in the General Surgery Program from 2014 to 2018.  The Motion to Compel is also **GRANTED** as to Interrogatory 12 as it relates to residents in the General Surgery Program from 2014 to 2018, but only as to documents that directly address decisions to place residents on probation or assign residents a unique rotation schedule.

The Motion to Compel is **GRANTED** as to written discovery related to Lisa Israel's Executive Analysis.

The Motion to Compel is **GRANTED** as to Dr. Rice's Request for Production No. 3.

The Motion to Compel is **GRANTED** as to the depositions of Drs. Wittgen, Freeman, Schwartz, Williams, Patel, and Montenegro, and Lisa Israel.  The depositions shall be limited in scope to questions relevant to Dr. Rice's Title VII claims.  Each deposition may be conducted for

14

up to two (2) hours total—up to ninety (90) minutes for Dr. Rice's counsel and up to thirty (30) minutes for SLU's counsel.

The Motion to Compel is **DENIED** as to Dr. Rice's request to depose the program director at Allegheny Hospital and the Chief Nursing Officer at SLU Hospital.

**IT IS FURTHER ORDERED** that SLU's Memorandum (Doc. [56]), construed as a motion to compel on the part of Defendants, is **GRANTED in part** and **DENIED in part**.

The Memorandum is **GRANTED** as to SLU's Interrogatory No. 8 and Requests for Production Nos. 32 and 33, except that production shall be limited to treatment Dr. Rice has received from mental health and primary care providers since 2013. As to all other treatment, the Memorandum is **DENIED**.

The Memorandum is **GRANTED** as to SLU's Request for Production No. 3 to the extent that it seeks non-privileged documents relating to Dr. Rice's claims that were not responsive to Request for Production No. 2. The Memorandum is **DENIED** to the extent it seeks the impressions of Dr. Rice or her counsel as to whether such documents support, cast doubt upon, or contradict her claims.

The Memorandum is **GRANTED** as to SLU's request regarding communications between Drs. Mandy Rice and Todd Rice that relate to Dr. Rice's residency at SLU.

Dated this 21st day of October, 2020.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE