**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MANDY RICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-cv-03166 SEP |
| ) | |
| ST. LOUIS UNIVERSITY, et al., ) | |
| ) | |
| Defendants. ) | |

**MOTION FOR SANCTIONS
FOR SPOLIATION OF EVIDENCE AND/OR
FOR ORDER ALLOWING PLAINTIFF SEVEN
HOURS TO DEPOSE LISA ISRAEL**

Plaintiff Mandy Rice, for her Motion for Sanctions for Spoliation of Evidence and or for Order allowing Plaintiff Seven Hours to Depose Lisa Israel, states as follows:

1.  Defendant SLU has destroyed evidence that it knew or should have known was relevant to Plaintiff's claims as asserted in her EEOC charge and this litigation. For months, SLU has resisted producing highly relevant documents relating to Lisa Israel's report (the "Executive Analysis") which concluded, among other things, that female residents were subject to bullying and harassment in the General Surgery residency program to which male residents were not subjected and that there was an atmosphere of fear and retaliation in that program.  See **Exhibit A**, Executive Analysis (for the Court's convenience, relevant portions of the Executive Analysis have been highlighted).

2.  On October 21, 2020, this Court ordered SLU to produce Israel's notes of interviews of residents and faculty for the Executive Analysis, and other documentation relating to her analysis, over SLU's objections.  See generally Doc. #80, Memorandum and Order 10/21/2020. Specifically, this Court found that the Executive Analysis, and by extension the

information on which it was based, satisfied the relevance standard for discovery in civil cases. To wit, "the Executive Analysis involves the same actors, reasons, and circumstances as Dr. Rice's claims." See Doc. #80, p. 3. This Court also held that the self-critical analysis privilege does not apply to the report or the information or document on which it was based. See Doc. #80, p. 5. Therefore, the Court granted Plaintiff's Motion to Compel as to written discovery related to the Executive Analysis. Doc. #80, p. 14.

3.	In a letter from its counsel to Plaintiff's attorney (**Exhibit B**), SLU stated that it cannot produce Lisa Israel's notes because they have been destroyed. This Court should use its inherent power and its authority under Federal Rule of Civil Procedure 37 to impose sanctions against SLU, including, but not limited to, removing the two-hour restriction previously imposed on the deposition of Lisa Israel.

4.	Plaintiff filed her complaint with the Equal Employment Opportunity Commission on August 5, 2018. See **Exhibit C**, EEOC Complaint. Amongst other issues, the EEOC Complaint detailed the bullying, intimidation, and anti-female trait sexism that SLU faculty perpetrated on Rice and other female surgical residents while a resident in the General Surgery program and that she was retaliated against for complaining about being harassed and bullied.

5.	On or about April 30, 2019, SLU's Director of Professional Oversight, Lisa Israel, M.Ed. completed the Executive Analysis. The report states that female residents were subject to bullying and harassment at the hands of SLU faculty, particularly female faculty members, as well as a culture of intimidation and fear of retaliation within the residency program. Further, the report states that Plaintiff's lawsuit was raised in at least some of the interviews conducted by Israel.

6.	In the process of preparing the report, Israel conducted thirty-seven (37) interviews with surgical residents and faculty, which presumably documented the conclusions about bullying,

harassment and retaliation in SLU's General Surgery residency program, as reported in the Executive Analysis. The report itself does not identify the individuals who were interviewed. An e-mail from Israel states that she compiled over one hundred pages of interview notes during her investigation. See **Exhibit D**.[1]

7. On November 30, 2020, SLU served its Second Amended Answers and Objections to Plaintiff's First Interrogatories and produced additional documents. The documents included the Executive Analysis (which Plaintiff already possessed) as well as some emails related to it, primarily regarding scheduling concerns. However, SLU did not produce any of Israel's notes from her interviews, nor any other of Israel's notes or other documentation related to her analysis.

8. On December 2, 2020, Plaintiff's counsel sent a "Golden Rule" letter to SLU's counsel via email demanding that SLU produce all of Israel's notes and other documentation and/or data related to the Executive Analysis. See **Exhibit E**, Plaintiff's Golden Rule Letter. At the same time, Plaintiff's counsel asked SLU's counsel for a date/time when they would be available to discuss by phone the issues raised in the Golden Rule letter.

9. SLU's counsel did not respond to the request for a phone call to discuss the issues in the letter. Instead, on December 8, 2020, SLU's counsel responded with a letter of its own. See **Exhibit B**. The letter stated that SLU produced no notes from Lisa Israel because "none exist." SLU's counsel further stated, "As is her standard practice, Ms. Israel destroyed her notes in the process of concluding her analysis (and well before we were ever aware of the analysis)."

10. The duty to preserve evidence arises when a party "knew or should have known" that the documents are likely to be material to litigation at some point in the future. *Lewy v.*

---

[1] SLU has labeled its entire supplemental document production as "Confidential – Attorneys Eyes Only." Plaintiff has served to SLU its objection to this designation pursuant to the Protective Order. However, since the thirty-day period for SLU to respond to Plaintiff's notice has not yet expired, Plaintiff will submit this Exhibit D to the Court directly via e-mail instead of via the electronic filing system.

*Remington Arms. Co., Inc.*, 836 F.2d 1104, 1112 (8th Cir. 1988). "A party is obligated to preserve evidence once the party knows or should know that the evidence is relevant to future or current litigation." *Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 232 (D. Minn. 2019). "The duty to preserve evidence extends to those [persons] likely to have relevant information – the key players in the case, and applies to unique, relevant evidence that might be useful to the adversary." *Id.* at 233.

11. When documents are destroyed pre-litigation pursuant to a record retention policy, the court must consider: (1) whether the policy is reasonable considering the facts and circumstances surrounding the documents; (2) whether lawsuits or complaints have been filed frequently concerning the type of records at issue; and (3) whether the document retention policy was instituted in bad faith. *Lewy, supra* at 1112.

12. SLU knew or should have known that the documentation underlying the Executive Analysis was relevant to Rice's claims. As noted above, Rice filed her EEOC complaint against SLU on August 5, 2018 in which she made allegations about having been bullied and harassed due to her sex and being retaliated against when she complained about the abusive treatment to which she had been subjected.

13. Further, on December 14, 2018, Rice filed a Motion to Amend the Petition in her state court lawsuit against SLU to which her proposed Amended Petition was attached (the Motion and proposed Amended Petition are attached hereto as **Exhibit F**). In the summary at the beginning of the Amended Petition, Rice alleged that:

> 3. During one of her rotations in March 2018, Dr. Rice was repeatedly verbally abused in the operating room by Dr. Grace Montenegro, an attending physician at St. Louis University Hospital ("Hospital"), and a SLU faculty member. After one surgery in which she was subject to particularly abusive language by Dr. Montenegro, Dr. Rice (and several nurses in the operating room) reported this abuse to the Chief Medical Officer at Hospital, Dr. Nirav Patel. This situation was

apparently also reported by others to SLU. Upon information and belief, Dr. Montenegro was given a warning by Dr. Patel on behalf of Hospital, and also by SLU, as a result of her abusive behavior toward Dr. Rice. Thereafter, in retaliation for the report she made concerning Dr. Montenegro's abusive behavior and/or filing this lawsuit, Dr. Rice was removed from her rotation at Hospital and reassigned to John Cochran's Veterans Administration Hospital ("VA Hospital"), denying her opportunities to participate in performing surgeries necessary to qualify for Board certification.

4. Shortly thereafter, and several months before she was to complete her repeat fourth year of training in the Residency Program, Dr. Rice was informed by SLU that it would not renew her residency contract for the fifth year of the residency program. SLU made the decision not to renew Dr. Rice's, without good cause, and in retaliation for Dr. Rice filing this lawsuit and reporting Dr. Montenegro's abusive behavior….

14. As such, SLU was on notice for months before Israel even began her interviews that any documents relating to complaints of bullying, harassment, or anti-female discrimination in the General Surgery program should be preserved.

15. E-mails produced by SLU show that beginning in November 2018, Israel repeatedly communicated with Dr. Catherine Wittgen (who at that time was a Defendant in the state court lawsuit), the Program Director of the General Surgery Residency Program, and the Interim Chair of the Department of Surgery. See **Exhibit G**.[2] Israel did not complete her report until April 30, 2019.

16. The Analysis "describes a residency program fraught with bullying and harassment" of the very kind Rice has alleged. Doc. #80, p. 3. The Executive Analysis involves the same actors, reasons, and circumstances as Rice's claims. Doc. #80 p.3. Moreover, the Executive Analysis directly mentions Rice's then pending state court lawsuit. See **Exhibit A**, p. 7. E-mails show that the report was shared with Dr. Siddiqui, Dr. Michael Williams (who replaced

---

[2] SLU has labeled its entire supplemental document production as "Confidential – Attorneys Eyes Only." Plaintiff has served to SLU its objection to this designation pursuant to the Protective Order. However, since the thirty-day period for SLU to respond to Plaintiff's notice has not yet expired, Plaintiff will submit this Exhibit G to the Court directly via e-mail instead of via the electronic filing system.

Dr. Wittgen as the Program Director for General Surgery), and Associate Dean Dr. Julie Gammack. See **Exhibit G**. In short, SLU and its employees were well-aware of Rice's claims and that Israel's Analysis was highly relevant to those claims. Despite all this, Israel was apparently not instructed to preserve her data and notes.

17. By allowing these documents to be destroyed, SLU has spoliated evidence that would have been highly relevant to Plaintiff's case. SLU's failure to preserve this evidence is indefensible and merits the imposition of sanctions.

18. SLU raises two excuses for its failure to preserve Israel's documentation: (1) that Israel destroyed her documents pursuant to her standard practice; and (2) SLU's counsel in this case were unaware of the existence of the documents until after they were destroyed. Both excuses are unavailing.

19. The destruction of discoverable evidence is not excused simply because it was done according to a "standard practice" or document retention policy. The very purpose of a "litigation hold" is to *suspend* standard document destruction policies so that potentially relevant documents are preserved. *Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 233 (D. Minn. 2019) An organization cannot blindly destroy documents and expect to be shielded by their document retention policies. *Lewy v. Remington Arms Co., Inc.*, 836 F.2d 1104 (8th Cir. 1988). The fact that SLU allowed its employees to destroy such highly relevant documents after already having notice of Rice's claims demonstrates that SLU failed to take proper steps to ensure that such important evidence was preserved. The failure to implement a litigation hold to preserve relevant evidence establishes the necessary intent to support the imposition of sanctions. *Fidelity Nat. Title Ins. CO. v. Captiva Lake Inv., LLC*, 2015 WL 94560 *2, No. 4:10-CV-1890 (E.D. Mo. Jan. 7, 2015); *Zubulake v. UBS Warbug LLC*, 220 F.R.D. 212, 221 (S.D.N.Y. 2003).  When litigation is imminent

or has already commenced, a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy. *Fidelity, supra at *2* citing *Stevenson v. Union Pac. R.R. Co.,* 354 F.3d 739, 750 (8th Cir.2004).

20. SLU further attempts to dodge responsibility by claiming that its attorneys were not aware of the existence of the Analysis until after Israel's notes had been destroyed. Even if true, that explanation does not help SLU. *Parties* have the duty to preserve relevant evidence, not just their attorneys. *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263, 267 (8th Cir. 1993) ("the destruction of evidence that a *party* knew or should have known was relevant to imminent litigation certainly justifies a sanction under the court's inherent power") (emphasis added). Even if SLU's counsel was not specifically aware of the existence of the Analysis before Israel's notes were destroyed (and it is hard to believe that at least SLU's in-house counsel was not aware of the Analysis at the time, or immediately after, it was conducted), SLU is not relieved of its duty to preserve potentially relevant evidence. Here, Lisa Israel, the Director of the Office of Processional Oversight at SLU, was in possession of relevant documents and destroyed them. Israel's own report shows that she was aware of the existence of Rice's claims and the underlying litigation. Other senior SLU employees, including the Director of the General Surgery program (Dr. Wittgen, who also is a named defendant), the Interim Director, and the incoming Director, were all aware of Rice's lawsuit and the existence of Israel's report, but still SLU failed to preserve Israel's data. Given the nature of Israel's report, the relevance of her interview notes to Rice's claims should have been obvious.

21. SLU's destruction of all the documents on which the Executive Analysis was based has severely prejudiced Plaintiff. Plaintiff's only avenue for recovering any of the information that was lost is through the deposition of Lisa Israel herself, although it is doubtful she will be able

to remember all the specifics of 37 different interviews, so it is unlikely that even her deposition will lead to discovery of all the relevant information from her interviews.

22.     In its Order dated October 21, 2020, Doc. #80, ruling on multiple discovery issues, the Court allowed for the Plaintiff to re-depose several witnesses who were previously deposed in the underlying state court action. The Court limited the length of the additional depositions to two (2) hours, with Plaintiff to have one and one-half (1½) hours for these depositions. Although Israel had not been deposed in the state court suit (and in fact Plaintiff was unaware of the Executive Analysis being conducted and Israel's report until after the close of discovery in the state court case), the Court likewise limited the time for Israel's deposition to two (2) hours.

23.     Based on SLU's destruction of Israel's notes, the Court should allow Plaintiff the full seven (7) hours to depose Israel as provided by Fed. R. Civ. P. 30(d)(1), as Plaintiff will need to question Israel to try to re-create, as much as possible, the information that was contained in her notes. The Court should order this either as a partial sanction for spoliation of evidence, or to permit Plaintiff the opportunity to conduct discovery as best as possible to discover the information that was contained in over 100 pages of interview notes that Israel had created as part of her Analysis.

WHEREFORE, Plaintiff respectfully prays that this Court enter an Order allowing Plaintiff the full seven (7) hours to depose Israel, awarding Plaintiff attorneys' fees incurred in bringing this Motion, and for such other relief as the Court deems just and proper. Additionally, Plaintiff reserves the right to request additional sanctions, including a possible adverse instruction at trial, as a result of the improper destruction of Israel's notes.

                        DANNA MCKITRICK, P.C.

BY:   /s/ David R. Bohm_____
David R. Bohm, 35166MO
Katherine M. Flett, 68183MO
Steven A. Ahillen, 64690MO
7701 Forsyth Blvd., Suite 1200
St. Louis, MO 63105-3907
(314) 726-1000/(314) 725-6592 fax
dbohm@dmfirm.com
kflett@dmfirm.com
sahillen@dmfirm.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 10th day of December 2020, a true copy of the foregoing was served on all counsel of record via electronic mail.

                        /s/ David R. Bohm_____