UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MANDY RICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-03166 SEP |
| | ) |
| ST. LOUIS UNIVERSITY, et al., | ) |
| | ) |
| Defendants. | ) |

**MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY**
**SSM SLUH, INC. IN RESPONSE TO SUBPOENA**

Plaintiff Mandy Rice, for her Motion to Compel SSM SLUH, Inc. states as follows:

1. On December 22, 2020, Plaintiff caused a Subpoena to Produce Documents to be served on the registered agent of SSM SLUH, Inc. (the corporate name of SSM-St. Louis University Hospital), directed to SSSM SLUH Inc.'s Custodian of Records. This subpoena is attached hereto as **Exhibit 1,**

2. The subpoena commands SSM SLUH, Inc. (SSM SLUH) to produce "All notes, investigations, reports, analyses, or other documents created from March 1, 2018 to present concerning any complaints or reports of mistreatment or bullying of Dr. Many Rice by Dr. Grace Montenegro." See **Exhibit 1**.

3. The subpoena originally included a response date of December 29, 2020. However, at the request of counsel for SSM-SLUH, Plaintiff's counsel voluntarily extended the time to respond to the subpoena until January 5, 2021.

4. On January 4, 2020, counsel for SSM SLUH emailed Plaintiff's counsel "SSM SLUH, Inc., d/b/a SSM Health St. Louis University Hospital's Objections to Subpoena," which is attached hereto as **Exhibit 2**. SSM SLUH objects on two primary grounds. First, SSM SLUH

contends that the documents Plaintiff is requesting are protected by the Missouri Peer Review Privilege, Section 537.035(4) RSMo. Second, SSM SLUH objects on the grounds that the information Plaintiff seeks is protected under the Patient Safety and Quality Improvement Act, 42 U.S.C. § 299b-22(a) ("PSQIA"). SSM-SLUH has not produced any documents responsive to the subpoena.

5. This Court has already ruled that documents relating to the investigation by Defendant St. Louis University ("SLU")'s of Dr. Rice's complaint about how she was treated by Dr. Montenegro are not protected by the Peer Review privilege or PSQIA. See Doc. #80, *Memorandum and Order* (a copy of which was previously provided to counsel for SSM SLUH by Palintiff's counsel). For the same reasons, SSM SLUH's records relating to Dr. Rice's complaint of having been bullied by Dr. Montenegro, and of then having been retaliated against by SLU for making such complaint, are also not protected from discovery.

6. First with regards to the Missouri peer review privilege, the peer review privilege only protects information and documents from discovery that concern the health care provided to a patient. The underlying issue that led to Plaintiff's complaint was that Dr. Montenegro was harassing, bullying, and treating Plaintiff differently because of her sex. Plaintiff is not interested in obtaining information about any patient or the healthcare provided to a patient, but only the documents related to any investigation that SSM SLUH undertook to investigate Dr. Montenegro's bullying/harassment of Plaintiff and/or retaliation against Plaintiff for making such complaint.

7. While Federal Rule of Evidence 501 permits federal courts to recognize state law privileges, no federal court has applied Missouri's peer review privilege in a case involving a federal question. Other courts have specifically rejected the applicability of other states' peer review privileges in Title VII discrimination cases. For example, in *Virmani v. Novant Health Inc.*,

the 4th Circuit held that the interest in obtaining probative evidence in an action for discrimination outweighs the interest that would be furthered by recognition of a privilege for medical peer review materials. 259 F.3d 284, 293 (4th Cir. 2001). The Court there stated, "The interest in facilitating the eradication of discrimination by providing perhaps the only evidence that can establish its occurrence outweighs the interest in promoting candor in the medical peer review process." *Id.* at 289.*See also, Mattice v. Mem'l Hosp. of S. Bend*, 203 F.R.D. 381, 385 (N.D. Ind. 2001) (holding the interest in obtaining probative evidence in an action for discrimination outweighs the interest that would be furthered by recognition of a state privilege for medical peer review materials); *Marshall v. Spectrum Med. Group,* 198 F.R.D. 1, 5 (D.Me.2000) (declining to recognize Maine's peer review privilege in anesthesiologist's action under the ADA); *Holland v. Muscatine Gen. Hospital*, 971 F.Supp. 385, 390 (S.D.Iowa 1997) (declining to recognize privilege in Title VII action); *Johnson v. Nyack Hospital*, 169 F.R.D. 550, 561 (S.D.N.Y.1996) (holding that New York and New Jersey peer review statutes did not apply in federal suit alleging race discrimination); *Robertson v. Neuromedical Center, 169 F.R.D. 80, 83–84 (M.D.La.1996)* (holding that state medical peer review privilege did not apply in an action alleging a violation of the ADA).

8.The Court should overrule SSM SLUH's objections for the same reasons this Court previously rejected the identical objections raised by Defendant SLU in response to Plaintiff's Request for Production No. 3. See Doc. #80, *Memorandum and Order*. That request sought "any and all communications, reports, or other documents concerning or related to any investigation by SLU into any complaint made by [Dr. Rice] or other residents form January 1, 2017, to the present concerning bullying, harassment, other disruptive behavior, or retaliation engaged in by Dr. Grace Montenegro and/or Dr. Theresa Schwartz." See Doc. #55, ¶9. SLU objected on the grounds of the Missouri peer review statute and the PSQIA.

3

9. This Court rejected SLU's arguments and overruled its objections. As to the claim of peer review privilege, this Court explained that federal courts are not required to apply state law privileges in federal question cases, and the creation of new privileges is generally disfavored. See *Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 183 (1990). Moreover, the medical peer review privilege carries little weight in employment discrimination cases. See Doc. #80, p. 6; *Holland v. Muscatine Gen. Hosp., supra* at 389. The Court noted that Plaintiff's request had a close degree of relevance to SLU's knowledge and investigations of the conduct of physicians which allegedly resulted in employment discrimination against Dr. Rice in violation of federal law. See Doc. #80, p. 7. Moreover, withholding the information would in no way further the State's policy goal of protecting communications to the extent they address the health care provided any patient. As such, this Court properly declined to apply the peer review privilege.

10. Here, the subpoena to SSM SLUH seeks documents squarely focused on Dr. Montenegro's treatment of Plaintiff, not relating specifically to medical care of any patients. While SSM SLUH is a separate entity than SLU, they are closely related. SSM SLUH operates the hospital, but St. Louis University employs the physicians that work there.

11. Further, it has become apparent that SSM SLUH conducted a more thorough investigation of Dr. Rice's complaint against Dr. Montenegro than did SLU. Only two partial pages of handwritten notes were produced by SLU regarding its investigation of Dr. Rice's complaint (these notes are attached as **Exhibit 3**). No other documentation was produced by SLU regarding any investigation of Dr. Rice's complaint. Dr. Patel has testified in his deposition taken in the state case that he did conduct an investigation, but previously refused to provide any information regarding that investigation. This court ruled that Plaintiff could again take Dr. Patel's deposition to inquire into his investigation. *See Doc. 80*. However, it is anticipated that SSM SLUH will

object to Dr. Patel providing testimony regarding his investigation on the same grounds as it has objected to production of the documents requested in the subpoena served on it by Plaintiff.

12. Similarly, this Court should also follow its prior reasoning as to the objection raised by SLU based on the PSQIA. SLU cannot rely on SSM SLUH to conduct its investigation into Dr. Rice's complaint as a method of cloaking the results of that investigation under the privilege afforded by the PSQIA. As this Court previously explained, SLU's claim that the process through which Dr. Rice's complaint was examined "doubled as its PSQIA investigation process" was insufficient to demonstrate that the investigation was protected as "patient safety work product" under the PSQIA. See Doc. #80, p.7. SLU stated that it was a member of a "patient safety organization," and contended that the information Plaintiff sought was "patient safety work product," just as SSM SLUH now also argues. The PSQIA defines "patient safety work product" ("PSWP") as follows:

> **(7) Patient Safety Work Product**
> **(A) In general**
> Except as provided in subparagraph (B), the term "patient safety work product" means any data, reports, records, memoranda, analyses (such as root cause analyses), or written or oral statements—
> **(i)** which—
> **(I)**
> are assembled or developed by a provider for reporting to a patient safety organization and are reported to a patient safety organization; or
> **(II)**
> are developed by a patient safety organization for the conduct of patient safety activities;
> and which could result in improved patient safety, health care quality, or health care outcomes; or
> **(ii)**
> which identify or constitute the deliberations or analysis of, or identify the fact of reporting pursuant to, a patient safety evaluation system.

See 42 U.S.C. 229b-21(7).

13. Although the scope of the PSWP privilege may appear broad at first glance, "it is in fact seriously circumscribed by the definition of 'patient safety organization': an organization certified by the Secretary of the Department of Health and Human Services the 'mission and primary activity of [which] are to conduct activities that are to improve patient safety and the quality of health care delivery' and which 'has bona fide contracts . . . with more than 1 provider for the purpose of receiving and reviewing patient safety work product.'" *Dunn v. Dunn*, 163 F.Supp.3d 1196, 1209 (M.D. Ala. 2016). Simply put, information is privileged under the PSQIA only if it is specifically generated or assembled for the purpose of reporting to an outside patient safety organization. *Crook v. Dart*, 408 F.Supp.3d 928, 929 (N.D. Ill. 2019). The statute was not intended to provide a blanket protection for all information and communications generated for quality control purposes. *Dunn*, 163 F.Supp.3d at 1209.

14. The only support that SSM SLUH offers is that Dr. Patel previously testified that the complaint ultimately was submitted to SSM SLUH's peer review process and the hospital's patient safety process. SSM SLUH has not contended that the purpose of Dr. Patel's review was to collect, manage, or analyze such complaints for reporting to a patient safety organization. SSM SLUH's objection only states that Dr. Patel forwarded the results of his investigation to the internal review process, not that it was ever submitted to an external patient safety organization as required by the PSQIA. See **Exhibit 2**. This is insufficient for the privilege afforded under the PSAIQ to apply.

15. Moreover, even if the information gathered in response to Dr. Rice's complaint was reported to a "patient safety organization," not all information reported to a patient safety organization is privileged under the PSQIA. Specifically, 42 U.S.C. § 229(b)-21(7)(B) identifies multiple exceptions to "patient safety work product," including medical records, billing and

6

discharge information, and any "information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system." See 42 U.S.C. § 229(b)-21(7)(B)(ii), stating "Such separate information or a copy thereof reported to a patient safety organization shall not by reason of its reporting be considered patient safety work product." Further, 42 U.S.C. § 229(b)-21(7)(B)(iii) states:

>   **(iii)** Nothing in this part shall be construed to limit—
>
>   **(I)**  the discovery or admissibility of information described in this subparagraph in a criminal, civil, or administrative proceeding;

16.     If the Court applies Missouri's peer review privilege or the PSQIA to this case, medical practitioners, residency programs and hospitals named as Title VII defendants could always hide behind this privilege by claiming that investigation of complaints of discrimination and harassment were part of the peer review process, and Title VII plaintiffs would never be able to obtain documents relating to internal investigation of such complaints. For the same reason that federal district courts in Missouri have rejected the self-critical analysis privilege in the employment discrimination context, this Court should reject Defendant's request for application of the peer review privileges in this case because it would shield crucial information about Plaintiff's claims of employment discrimination and retaliation.

17.     SSM SLUH also objects on the grounds of attorney-client privilege, the work product doctrine, and the common interest privilege/doctrine. To the extent that SSM SLUH claims privilege on these grounds, the Court should order SSM SLUH to produce a privilege log so that Plaintiff can assess the privilege claims.

18.     SSM SLUH also objects on the grounds that the subpoena is "vague, ambiguous, overly broad, and unduly burdensome." However, SSM SLUH does not in any way explain or

elaborate upon this boilerplate objection. Without more, this Court should disregard it. See *St. Paul Reinsurance Co., Ltd v. Commercial Financial Corp.*, 198 F.R.D. 508, 512 (N.D. Iowa 2000) (mere statement by a party that an interrogatory or request for production was "vague, ambiguous, overbroad, unduly burdensome, etc.," without specifying how each request or interrogatory was deficient and without articulating the particular harm that would accrue if the party were required to respond, is not adequate to voice a successful objection).

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order compelling SSM SLUH, Inc. to produce all documents responsive to Plaintiff's subpoena, and for such other relief as the Court deems just and proper.

Respectfully submitted,

DANNA MCKITICK, P.C.

BY: /s/ David R. Bohm
David R. Bohm, 35166MO
Katherine M. Flett, 68183MO
Steven A. Ahillen, 64690MO
7701 Forsyth Blvd., Suite 1200
St. Louis, MO 63105-3907
(314) 726-1000/(314) 725-6592 fax
dbohm@dmfirm.com
kflett@dmfirm.com
sahillen@dmfirm.com

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that, on this 12th day of January 2021, I caused true and correct copies of the foregoing document and related exhibits to be served: (1) upon the parties receiving notice through the Court's ECF system by filing with the Court's ECF system, and (2) to Amy Blaisdell, counsel for SSM SLUH, Inc., via e-mail at: apb@greensfelder.com.

/s/ David R. Bohm

4813-2713-7492, v. 1