UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MANDY RICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-cv-03166 SEP |
| ) | |
| ST. LOUIS UNIVERSITY, et al., ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S REPLY TO SSM SLUH, INC.'S RESPONSE
TO PLAINTIFF'S MOTION TO COMPEL**

**Introduction**

The documents Plaintiff is seeking in her Subpoena (the "Subpoena") to SSM SLUH, Inc. ("SSM SLUH") are highly relevant to her claims of sex-based employment discrimination. Plaintiff has identified discrete categories of documents covering a limited period of time and concerning a specific subject, investigation by SSM SLUH of her complaint of having been subjected to bullying by Dr. Montenegro (attached as Exhibit B to SSM SLUH's Memorandum), and retaliation for making such complaint. Responsive documents should be readily identifiable and replying to this Subpoena does not impose an unreasonable burden. This Court should decline to find that any peer review privileges, either under state or federal law, shield the requested records from discovery, based upon the same rationale that this Court articulated in its prior order.

1. **Dr. Rice's complaints are relevant to her claims of bullying and harassment regardless of how SSM SLUH characterizes its investigation.**

The documents sought by the Subpoena to SSM SLUH, Inc. are highly relevant to Plaintiff's claims of sex-based discrimination. The underlying issue that led to Plaintiff's complaint was that Dr. Montenegro was harassing, bullying, and treating Plaintiff differently

because of her sex. After she made her report, she was subject to retaliation for doing so, which was also reported to Dr. Patel.  See **Exhibit A**, Deposition of Mandy Rice, 6/22/2020, 1726:25-1727:17.  As such, any reports, analyses, or other documents in response to Plaintiff's complaints are highly relevant to her claims. Indeed, this Court said as much in its prior Order. See Doc. #80, p.7. When Plaintiff requested similar documents from Defendant SLU, this Court found that Plaintiff's request was highly relevant to Plaintiff's employment discrimination claims. See Doc. #80, p.7.  Defendant SLU produced notes of interviews with a resident, Dr. Johnathon Chica, and the anesthesiologist, Dr. Lati (the notes for each were less than one-half page in length). SSM SLUH apparently conducted a much more thorough investigation of Dr. Rice's complaints of bullying and retaliation. See **Exhibit B**, Deposition of Nirav Patel, MD, 2/22/2019, 26:11-27:21, 30:21-31:6. Further although SLU and SSM SLUH are separate legal entities, they clearly work in close conjunction with one another. The physicians who perform services at St. Louis University Hospital (owned by SSM SLUH) are employees of SLU. See **Exhibit B**, Deposition of Nirav Patel, MD, 2/22/2019, 6:14-21; 11:6-16. For the same reasons that SLU's records of the investigation are relevant, so are the records of investigation of Dr. Rice's complaints by SSM SLUH.

SSM SLUH's Response mischaracterizes the standard for relevance under Fed. R. Civ. P. 26. SSM SLUH essentially argues that because Rice's complaint regarding Dr. Montenegro did not specifically mention sex-based discrimination that the documents Plaintiff seeks relating to the investigation of the complaint are not relevant to Plaintiff's claims in this lawsuit. This argument attempts to establish an arbitrarily high bar for relevancy and fails to consider Dr. Rice's complaint in context. The behavior of Dr. Montenegro details in Dr. Rice's complaint was not an isolated event taking place in a vacuum. Instead, Plaintiff's Petition alleges a broader pattern of discriminatory behavior against Dr. Rice on the basis of her sex. Further, a single piece of evidence

need not prove Plaintiff's entire case to be relevant and discoverable. The threshold for relevance under Fed. R. Civ. P. 26 is low. A party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, and relevant evidence need not even be admissible at trial if the discovery is calculated to lead to the discovery of admissible evidence. *E.E.O.C. v. Randall Ford, Inc.*, 298 F.R.D. 573, 574 (D. Ark. 2014).

If SSM SLUH's position were to be accepted, it would establish an unfairly high standard for relevance for evidence in employment discrimination cases. Employee complaints of bullying and harassing behavior would always have to include a specific reference of sex-based discrimination for resulting investigations to be relevant and discoverable. Further, Dr. Rice's complaint specifically stated that she had been treated differently than a male resident in the operating room during the time that she was harassed by Dr. Montenegro. Sex-based discrimination need not be proved by "direct proof" only. SSM SLUH has not cited to any authority to support the imposition of such a radically high threshold.

**2. The medical peer review privilege does not apply.**

This Court has already rejected the application of Missouri's medical peer review privilege to this case. Now SSM SLUH attempts to re-cast this Court's prior ruling as applicable only to Defendant SLU. Defendant SLU's responses were the focus of this Court's prior Order, but the same rationale behind this Court's prior order applies here as well. As this Court explained, federal courts are not required to apply state law privileges in federal question cases, and the creation of new privileges is generally disfavored. See Doc. #80. See also *Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 183 (1990). As the Supreme Court of the United States articulated in *Univ. of Pennsylvania*, federal courts do not create an evidentiary privilege unless it promotes sufficiently important interests to outweigh the need for probative evidence. *Id*. at 189.

3

SSM SLUH's Response claims that the need for the creation of a medical review privilege outweighs Plaintiff's need for probative evidence, but it offers zero evidence in support of this proposition. Regardless, federal appellate courts have been widely unwilling to recognize a medical peer review privilege. See *Jenkins v. DeKalb County, Georgia*, 242 F.R.D. 652, 659 (N.D. Ga. 2007) ("It appears that every United States Court of Appeals that has addressed the issue of whether there is a federal medical peer review privilege has rejected the claim."). The supposed justification for the medical peer review privilege does not apply in this case. The rationale for confidentiality in medical peer review matters is that patient care will suffer if a physician's candid comments are subsequently used in malpractice cases. That reasoning does not apply in a case about sex-based discrimination.

SSM SLUH attempts to draw a distinction from the body of federal law refusing to recognize a medical peer review privilege by arguing that a different standard should apply when discovery is requested from a non-party. However, SSM SLUH cites to no precedent whatsoever to support this proposition. On the contrary, federal courts have treated parties and non-parties no differently when considering whether to recognize a new privilege. See *Marshall v. Spectrum Medical Group*, 198 F.R.D. 1, 4-5 (D. Me. 2000) (holding that no federal peer review privilege existed and ordering non-party to produce documents in response to the plaintiff's subpoena for his credentialing file which allegedly contained disparaging comments about him). See *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 560 (S.D.N.Y. 1996) (holding that medical peer review privilege did not apply and ordering non-party hospitals to produce records). See *Syposs v. U.S.*, 63 F. Supp. 2d 301, 308 (W.D.N.Y. 1999) (declining to recognize a federal medical peer review privilege and ordering non-party to produce documents responsive to subpoena). See also *Dunn v. Dunn*, 163 F. Supp. 3d 1196, 1208 and n.10 (M.D. Ala. 2016) (noting the distinct lack of cases since the

4

enactment of the Federal Rules of Civil Procedure to support the proposition that non-party status is in any way relevant for determining whether the medical peer review privilege applies). Simply put, SSM SLUH's proposed separate non-party standard does not exist and has no basis in law.

### 3. The Patient Safety and Quality Improvement Act does not protect the documents sought by the Subpoena.

As to SSM SLUH's objection based on the Patient Safety and Quality Improvement Act ("PSQIA"), this Court should follow its prior reasoning. SSM SLUH is simply making the same arguments that Defendant SLU made. As this Court previously explained, the claim that the process through which Dr. Rice's complaint was examined doubled as a PSQIA investigation process is not sufficient to demonstrate that the investigation was protected as "patient safety work product" ("PSWP") under the PSQIA. See Doc. #80, p.7. SSM SLUH offers no new evidence sufficient to disturb this Court's prior ruling.

Although SSM SLUH describes the scope of PSWP in sweeping terms, the protection it offers is not nearly so broad as it contends. The protection offered by the PSQIA is a "unique and narrow" privilege. See *Schlegel v. Kaiser Foundation Health Plan*, No. CIV 07-0520, 2008 WL 4570619 (E.D. Cal. Oct. 14, 2008). Information is privileged under the PSQIA only if it specifically generated or assembled for the purpose of reporting to a "patient safety organization" or "patient safety evaluation system." 42 U.S.C. § 229b-21(7). Under the PSQIA, "patient safety organization" means a private or public entity or component thereof that is certified and listed by the U.S. Secretary of Health and Human Services. 42 U.S.C. § 299b-21(4). "Patient safety evaluation system" means the collection, management, or analysis of information for reporting to or by a patient safety organization. 42 U.S.C. § 299b-21(6).

SSM SLUH has not shown that its investigation of Dr. Rice's complaint was ever generated or assembled for the purpose of reporting to a patient safety organization or patient safety

5

evaluation system. SSM SLUH's Response claims in a perfunctory fashion that SSM SLUH "is a participant in a PSO" without offering any evidence that the alleged PSO actually qualifies as a PSO under the statute. See Doc. #105, p.10. Instead, the Response merely cites to the attached Declaration of Carol Davidson without further comment. See Doc. #105-6. However, Davidson's Declaration is also inadequate and does not address the PSQIA's requirements. While Davidson identifies the name of the PSO, the "Center for Patient Safety," nowhere does the Declaration explain why the Center for Patient Safety qualifies as a PSO. Rather, just like the Response, Davidson merely announces that the Center for Patient Safety is a PSO without providing any evidence in support. Nowhere does the Response, Davidson's Declaration, or any other exhibit demonstrate that the statutory requirements, including certification by the Secretary of Health and Human Services, have been satisfied.

Again, the only support that SSM SLUH offers that its investigation of Dr. Rice's complaint qualifies as PSWP is that Dr. Patel previously testified that the complaint ultimately was submitted to SSM SLUH's peer review process and the hospital's patient safety process. SSM SLUH has not contended that the purpose of Dr. Patel's review was to collect, manage, or analyze such complaints for reporting to a patient safety organization. SSM SLUH's objection only states that Dr. Patel forwarded the results of his investigation to the internal review process. There is no evidence that the information was assembled for the purpose of reporting to an actual PSO.

Even if Dr. Patel had submitted the results of his investigation to a "patient safety organization" or "patient safety evaluation system," not all such information is privileged under the PSQIA. Under 42 U.S.C. § 299b-21(7)(B), any information that is collected, maintained, or developed separately, or exists separately, from a patient safety evaluation system does not constitute "patient safety work product." Further, 42 U.S.C. § 229(b)-21(7)(B)(iii) provides that

6

the PSQIA does not prohibit the discoverability or admissibility of such information in a civil, criminal, or administrative proceeding. Moreover, the purpose of providing the patient safety work product privilege is to improve patient safety, health care quality, or health care outcomes. 42 U.S.C. § 299b-21(7). SSM SLUH fails to explain how suppressing information relating to claims of bullying and sex-based discrimination furthers the statute's goals.

SSM SLUH is wrong to downplay the chilling effect that would follow affording PSWP protection to investigations of complaints such as Dr. Rice's. Instead of being used as a tool to promote better and safer healthcare, Title VII defendants could use the PSQIA to hide relevant behind this privilege by claiming that investigation of complaints of discrimination and harassment were part of the peer review process. What was intended to be a patient safety statute would instead be used as a shield by defendants in sex-based discrimination cases. And if this was the rule, medical employers, such as SLU, would be encouraged to defer investigation of employee complaints of sexual discrimination or harassment by medical personnel to hospital-based patient safety organizations to shield the results of the investigation in Title VII cases.  This Court should adhere to its prior ruling and reject SSM SLUH's request for application of the PSQIA in this case to shield it from making the requested production, particularly as it would cut off Plaintiff from information highly relevant to her claims of employment discrimination and retaliation.

To the extent that patient identities should be protected, an appropriate protective order can be fashioned to conceal the identities of individual patients who are not parties to this lawsuit. Again, Plaintiff is not interested in obtaining information about any patient or the quality of the healthcare provided to a patient, but only the documents related to any investigation that SSM SLUH undertook to investigate Dr. Montenegro's bullying/harassment of Plaintiff and/or retaliation against Plaintiff for making such complaint.

4. **The Subpoena is specific, reasonably limited in time and scope and does not present an undue burden on SSM SLUH.**

SSM SLUH's argument that the Subpoena is vague, ambiguous, and unduly burdensome is completely unsupported. Just like it its objections, SSM SLUH's Response merely announces these objections in a conclusory fashion without any analysis of the language of the Subpoena itself, any supporting authority, or any evidence. For this reason alone, the Court should disregard these objections.

Moreover, the Subpoena requests specific categories of documents (notes, investigations, reports, analyses, or other documents) to be produced from a limited time frame (March 1, 2018 to present) concerning an explicit subject (complaints or reports of bullying of Dr. Mandy Rice by Dr. Grace Montenegro). SSM SLUH's description of the Subpoena as a sweeping request for copious amounts of documents is unrealistic and mischaracterizes what the Subpoena actually seeks. The subpoena is more than sufficiently specific and narrow to enable SSM SLUH to identify responsive documents with reasonable effort.

SSM SLUH's concerns regarding privilege and work product are also unfounded. The Response argues that SSM SLUH should not have to bear the cost of reviewing and logging privileged communications that have no bearing on Plaintiff's allegations. This is a red herring, because the Subpoena only seeks documents that <u>are</u> relevant to her allegations. The purpose of a privilege log is to identify responsive documents that are being withheld from production under a claim of privilege. Documents that are not relevant would not be responsive in the first place and would not need to be included on a privilege log.

## Conclusion

The Subpoena seeks documents that are highly relevant to Plaintiffs employment discrimination claims. The scope of the request is sufficiently narrow and specific such that it does

8

not impose an undue burden on SSM SLUH. This Court should refuse to find that any peer review privileges shield the request records from discovery in accordance with its prior order on the same issues. Moreover, the deposition of Dr. Nirav Patel is scheduled for February 11, 2021. Since SSM SLUH has indicated that it intends to raise its peer review privilege objections at Dr. Patel's deposition, judicial economy would be served by the Court ruling on this Motion to Compel in advance of Dr. Patel's deposition.

Respectfully submitted,

DANNA MCKITICK, P.C.

BY: /s/ David R. Bohm
David R. Bohm, 35166MO
Katherine M. Flett, 68183MO
Steven A. Ahillen, 64690MO
7701 Forsyth Blvd., Suite 1200
St. Louis, MO 63105-3907
(314) 726-1000/(314) 725-6592 fax
dbohm@dmfirm.com
kflett@dmfirm.com
sahillen@dmfirm.com

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that, on this 28th day of January 2020, I caused true and correct copies of the foregoing document and related exhibits to be served: (1) upon the parties receiving notice through the Court's ECF system by filing with the Court's ECF system, and (2) to Amy Blaisdell, counsel for SSM SLUH, Inc., via e-mail at: apb@greensfelder.com.

/s/ David R. Bohm

4813-2713-7492, v. 1